759 N.W.2d 75 (2009)
276 Neb. 988
James D. VOKAL, appellee,
v.
NEBRASKA ACCOUNTABILITY AND DISCLOSURE COMMISSION, appellant.
No. S-07-1314.
Supreme Court of Nebraska.
January 2, 2009.
*78 Jon Bruning, Attorney General, and Lynn A. Melson for appellant.
L. Steven Grasz and Henry L. Wiedrich, Omaha, of Husch, Blackwell & Sanders, L.L.P., for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The Nebraska Political Accountability and Disclosure Act (NPADA)[1] bars a government official from the use of property under his or her official care and control for the purpose of campaigning.[2] The issue in this case is whether a city official violates that prohibition by being filmed in his city office for the purpose of creating a video advertisement for his reelection campaign.

FACTS
James D. Vokal was a member of the Omaha City Council running for reelection in 2005. As part of his campaign, Vokal approved the creation and distribution of a 30-second video advertisement wherein he was shown at various locations. Approximately 7 seconds of that video were recorded in Vokal's office in the city-county building in Omaha. That portion of the video shows Vokal sitting at his desk typing at a computer keyboard.
A complaint was filed with the Nebraska Accountability and Disclosure Commission (the Commission) by the director of the opposing political party, alleging that by videotaping part of his campaign advertisement in his government office, Vokal had violated the provision of the NPADA that prohibits a public official's "use of personnel, property, resources, or funds under his or her official care and control for the purpose of campaigning for or against the nomination or election of a candidate."[3] Vokal's office, desk, and the keyboard are public property. There was no allegation that Vokal expended public funds or used public employees or video equipment in making the video.
At a hearing before the Commission, Vokal alleged that he did not violate the plain meaning of § 49-14,101.02(1), because his actions were not "use" under that section. Vokal also alleged that because there was no lock on the door and the office was open to the public, the office was not under his "official care and control" and that his actions fell under an exception allowing that government facilities be made available for campaign purposes if the identity of the candidate is not a factor in granting such access. Finally, Vokal asserted that to the extent he could be found to have violated the NPADA, the statute was unconstitutionally vague and subject to arbitrary enforcement.
Vokal presented evidence to the Commission that at the time he filmed his advertisement, the Legislature's rules allowed its members to have photo or video sessions in the legislative chambers for political races in which the individual legislator was a candidate for public office. While Vokal's case was pending before the Commission, the Legislature amended its *79 rules to prohibit the use of the legislative chambers for any campaign-related activities.
The Commission concluded that Vokal had violated § 49-14,101.02(1) and fined him $100. The Commission reasoned simply that Vokal did "use," for campaign purposes, an office, desk, and computer located on public property and which fell under his official care and control.
Vokal appealed to the district court, which reversed the Commission's decision. The district court found that the term "use" was an ordinary term properly understood by its common usage and understanding. However, that term had to be understood in the context of the NPADA. Viewed in this light, the district court concluded that § 49-14,101.02(1) contained the implicit requirement that, in order to be a violation, the conduct must result in a cost to the taxpayers or a financial gain to the public official. Since neither occurred in this case, the district court found no violation. The court refused to find the statute unconstitutional.
The Commission filed an appeal, and Vokal filed a purported cross-appeal.

ASSIGNMENTS OF ERROR
In summary, the Commission asserts that the district court erred in determining that Vokal's use of city property did not violate § 49-14,101.02. Vokal, on cross-appeal, asserts that the district court erred in failing to declare § 49-14,101.02 unconstitutionally vague.

STANDARD OF REVIEW
The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[4]

ANALYSIS
On appeal, the parties do not dispute that Vokal's office and its contents were "property" under his "official care and control," as defined by the NPADA, or that Vokal was "campaigning for or against the nomination or election of a candidate" when he filmed 7 seconds of his campaign advertisement in his office. The question is whether sitting at his desk touching the keyboard inside that office was "use" of these resources under § 49-14,101.02 and, thus, a violation of the NPADA.
In answering that question, we are guided by several familiar principles of statutory construction. In discerning the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself.[5] Under principles of statutory construction, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible.[6]
Moreover, because § 49-14,101.02 *80 is penal in nature,[7] it must be strictly construed.[8] Penal statutes are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[9] A penal statute will not be applied to situations or parties not fairly or clearly within its provisions.[10] So, with those principles in mind, we turn to the specific provisions of the NPADA.
The NPADA was promulgated in 1976 to set up disclosure and accountability procedures concerning campaign finance.[11] Specifically, it was designed to establish requirements for the financing, disclosure, and reporting of political campaigns and lobbying activities and provide conflict of interest provisions for ensuring the independence and impartiality of public officials.[12] Section 49-1402 states in full:
The Legislature finds:
(1) That the public interest in the manner in which election campaigns are conducted has increased greatly in recent years, creating a need for additional disclosure and accountability;
(2) That there is a compelling state interest in ensuring that the state and local elections are free of corruption and the appearance of corruption and that this can only be achieved if (a) the sources of funding of campaigns are fully disclosed and (b) the use of money in campaigns is fully disclosed;
(3) That it is essential to the proper operation of democratic government that public officials and employees be independent and impartial, that governmental decisions and policy be made in the proper channels of governmental structure, and that public office or employment not be used for private gain other than the compensation provided by law; and
(4) That the attainment of one or more of these ends is impaired when there exists, or appears to exist, a substantial conflict between the private interests of a public official and his or her duties as such official; and that although the vast majority of public officials and employees are dedicated and serve with high integrity, the public interest requires that the law provide greater accountability, disclosure, and guidance with respect to the conduct of public officials and employees.
Section 49-14,101.02, enacted in 2001, falls under the conflicts of interest section of the act.
The broad term "use," found in § 49-14,101.02, is not specifically defined in the NPADA. The Concise Oxford American Dictionary defines "use" as to "take, hold, or deploy (something)" and to "take or consume."[13] The Commission acknowledged at oral argument that the office, desk, and computer in this case were only "props" for the video. There is no allegation that Vokal created or distributed campaign *81 material using his office or the computer in that office. There is likewise no evidence that he used the office telephone to solicit votes or contributions. We question, even under the strict dictionary definition of "use," whether the mere fact that items under official control that are present in the background as "props" in an advertisement can be considered as a deployment or consumption of these items.
But, regardless, we do not view the term "use" in a vacuum. Instead, we must understand it in the context of the statute where it is found. And we consider the express goal of the NPADA's conflict of interest provisions, which is the independence and impartiality of public officials. We find the case of Saefke v. Vande Walle[14] illustrative of the meaning of "use" in this context.
In Saefke, the Supreme Court of North Dakota held that a judge running for reelection did not violate a corrupt practices act forbidding the "use" of state property for political purposes when he was filmed for a campaign advertisement wearing his judicial robe while seated at the bench in the courtroom. Although the act specified that "state property" included "buildings," the court found the broad construction asserted by the contestant elector was simply unreasonable.
The court noted that because the statute was penal in nature, it must be strictly construed and given a reasonable construction. The court then explained that the primary intent of the legislature in passing the corrupt practices act was to prevent the misuse of public funds or a financial misuse of public property for political purposes. The court found no evidence of such misuse. Instead, by being filmed wearing his robe while seated at the bench in the courtroom, the court found that the judge was simply trying to express to voters that he already occupied the office to which he sought reelection. The court observed that it was common practice for state officials to be shown sitting at their desks in campaign literature. And it reasoned that given such common practice, "surely if the legislature intended such `use' of state property to be a violation ..., it would have so provided in specific and clear terms."[15]
We find the North Dakota court's reasoning to be persuasive. We simply find nothing in the statute indicating that we should stretch the meaning of "use" to its broadest possible applicationto a case where nothing was "consumed" and the actions do not create any impression of a conflict of interest. A commonsense approach to the term, in the context in which it is presented, does not warrant such a broad understanding. In fact, the Commission has been unable to persuasively explain how Vokal's actions represented any of the problems the NPADA sought to address. The Commission admits that a much clearer violation would be present had Vokal, for instance, actually used a photocopier or other equipment to produce campaign flyers. While the Commission suggests that Vokal was utilizing an "unfair advantage" of his incumbency, as in Saefke, we find that Vokal was merely conveying something that most of the public already knew and that Vokal had a right to convey to those who did not. As the Commission concedes, Vokal would not have been sanctioned had he simply rebroadcast news footage showing him working in his office. We see no meaningful distinction between such a scenario and what happened in this case.
We agree with the district court that Vokal's actions did not violate § 49-14,101.02. *82 Therefore, we affirm the district court's decision reversing the Commission's judgment.
We do not explicitly reach Vokal's contention that the district court erred in failing to find § 49-14,101.02 unconstitutional. Not only would it be unnecessary to our disposition of this appeal, but Vokal also failed to properly set forth any assignment of error in his cross-appeal. A party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant.[16] Thus, the cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts.[17] In this case, Vokal's separate section entitled "Brief on Cross-Appeal" contains nothing more than an argument section. We have repeatedly said that errors argued but not assigned will not be considered on appeal.[18] Parties wishing to secure appellate review of their claims for relief must be aware of, and abide by, the rules of this court and the Nebraska Court of Appeals in presenting such claims.[19]

CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court.
AFFIRMED.
WRIGHT, J., participating on briefs.
NOTES
[1] Neb.Rev.Stat. §§ 49-1401 to 49-14,141 (Reissue 2004).
[2] See § 49-14,101.02.
[3] See § 49-14,101.02(1) (now found at § 49-14,101.02(2) (Cum. Supp. 2006)).
[4] Neb. Account. & Disc. v. Citizens for Resp. Judges, 256 Neb. 95, 588 N.W.2d 807 (1999).
[5] Becker v. Nebraska Acct. & Disclosure Comm., 249 Neb. 28, 541 N.W.2d 36 (1995).
[6] State v. Hochstein and Anderson, 262 Neb. 311, 632 N.W.2d 273 (2001).
[7] See § 49-14,126(1)(c). See, also, Shamberg v. City of Lincoln, 174 Neb. 146, 116 N.W.2d 18 (1962).
[8] See Johnson Fruit Co. v. Story, 171 Neb. 310, 106 N.W.2d 182 (1960).
[9] See State v. Hochstein and Anderson, supra note 6.
[10] See, Shamberg v. City of Lincoln, supra note 7; Johnson Fruit Co. v. Story, supra note 8.
[11] Statement of Purpose, L.B. 987, Committee on Miscellaneous Subjects, 84th Leg., 2d Sess. (Feb. 26, 1976); Neb. Account. & Disc. v. Citizens for Resp. Judges, supra note 4.
[12] Id.
[13] Concise Oxford American Dictionary 1001 (2006).
[14] Saefke v. Vande Walle, 279 N.W.2d 415 (N.D.1979).
[15] Id. at 417.
[16] See Neb. Ct. R.App. P. § 2-109(D)(4). See, also, In re Interest of Natasha H. & Sierra H., 258 Neb. 131, 602 N.W.2d 439 (1999).
[17] See § 2-109(D)(1). See, also, Schindler v. Walker, 256 Neb. 767, 592 N.W.2d 912 (1999).
[18] See, e.g., Sturzenegger v. Father Flanagan's Boys' Home, 276 Neb. 327, 754 N.W.2d 406 (2008); Malchow v. Doyle, 275 Neb. 530, 748 N.W.2d 28 (2008). See, also, Schindler v. Walker, supra note 17.
[19] In re Interest of Natasha H. & Sierra H., supra note 16.