Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/21/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Arthur D. Ebert, appellant.
___ N.W.2d ___

Filed June 21, 2019.    No. S-18-752.

1. **Search and Seizure: Appeal and Error.** The denial of a motion for return of seized property is reviewed for an abuse of discretion.
2. **Courts: Jurisdiction: Search and Seizure: Property.** Neb. Rev. Stat. § 29-820 (Reissue 2016) applies only where the exclusive jurisdiction of a court under Neb. Rev. Stat. § 29-818 (Reissue 2016) has not been invoked.
3. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. The court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition.
4. **Criminal Law: Search and Seizure: Property.** Upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property.
5. **Criminal Law: Search and Seizure: Property: Presumptions: Proof.** When criminal proceedings have terminated, the person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property.
6. **Property: Presumptions: Evidence.** A presumption of ownership is created by exclusive possession of personal property, and evidence must be offered to overcome that presumption.
7. **Search and Seizure: Property: Presumptions: Title.** Seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership.
8. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. The presumptive right to possession of seized property may be overcome when superior title in another is shown by a preponderance of the evidence.

Appeal from the District Court for Stanton County: Mark A. Johnson, Judge. Reversed and remanded for further proceedings.

Bradley A. Ewalt, of Ewalt Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Stacy, J.

As part of a plea agreement with Arthur D. Ebert, the State dismissed a charge of theft by unlawful taking. Ebert subsequently filed a motion for return of the property seized from him and originally alleged to be stolen. After conducting an evidentiary hearing, the district court ordered some items of property returned to Ebert and others were returned to his former employer. Ebert appeals. Because the burden of proof was not properly applied, we reverse, and remand for further proceedings.

## FACTS

In December 2016, an information was filed in the district court for Stanton County charging Ebert with one count of theft by unlawful taking. The information alleged Ebert had, between the dates of June 6 and November 1, 2016, exercised control over movable property belonging to "3D Metal — Nucor Steel" (3D Metal) with the intent to deprive "him/her thereof." The information listed the movable property as:

> (2) Husky plastic sheeting rolls, (2) DeWalt tool cases each containing tools, (1) Red Milwaukee case with Milwaukee sawzall, (2) JVC tower speakers SX-F7TH, (1) Blue nylon braided rope, (1) Coral blue 1 gallon jug of wiper fluid, (12) Foam nitrile gloves, (2) Milwaukee saw blades, (4) Abus metal locks, (4) AC100+ gold adhesive

tubes, (1) Stanley vice grip, (4) Pair of white neoprene gloves, (1) Miller brand harness, [and] Miscellaneous assorted tools with (1) tape measure[.]

In a separate case in Stanton County, Ebert was charged with one count of first degree sexual assault and one count of first degree false imprisonment. Pursuant to a plea agreement, Ebert entered guilty pleas to both of those counts and, in exchange, the State dismissed in its entirety the case charging theft by unlawful taking.

Several months after Ebert's theft case was dismissed, he moved for the return of "his property seized from his vehicle by the Stanton County Sheriff's office." At the evidentiary hearing on this motion, an exhibit identifying the seized property was offered and received. The exhibit identified the same items of property that had been listed in the dismissed information charging Ebert with theft by unlawful taking.

Ebert testified that he was employed by 3D Metal from June 6 to November 1, 2016, as a laborer and welder. Ebert conceded that many of the items seized from him actually belonged to 3D Metal. Ultimately, he requested the return of only five items: (1) the nylon harness, (2) a square and level, (3) one of the DeWalt tool cases and included tools, (4) the Milwaukee sawzall, and (5) the JVC speakers. With respect to these five items, we summarize the evidence adduced.

Ebert testified the speakers were gifted to him by his work supervisor, and he claimed to have purchased the other four items. He did not offer receipts for any of the items, but he testified as to the circumstances surrounding their purchase. According to Ebert, he purchased the nylon harness from 3D Metal by having $25 deducted from his weekly paychecks. He purchased the square and level at a department store in the summer of 2016, and he purchased the DeWalt tool case at a yard sale for $125 the week before his arrest. Ebert testified he knew one of the two DeWalt tool cases seized belonged to him, because the other tool case had a serial number written on it by 3D Metal. Ebert testified he purchased the Milwaukee sawzall from a store in Norfolk, Nebraska, in

early June 2016, because he needed it to do a porch repair job for a client.

On cross-examination, Ebert testified he needed tools to do his job at 3D Metal because he mostly did "demolition and refabrication." He testified that he used a truck owned by 3D Metal while he was employed, but the truck stayed on 3D Metal's premises during the evenings. He stated the DeWalt tool case owned by 3D Metal stayed on the truck. Ebert admitted that 3D Metal owned and used Milwaukee sawzalls just like the one seized from him. He stated that 3D Metal kept its sawzalls locked in a cabinet inside the shop and that he did not have a key to the cabinet. He testified that although he had used a different brand of sawzall while employed by 3D Metal, he never used a Milwaukee sawzall during that employment.

The State then called Joe Ledford, an onsite supervisor for 3D Metal. He confirmed that 3D Metal provided work trucks to employees and that the trucks were used only during the day and returned to 3D Metal in the evening. Ledford testified that some tools would remain on the work truck and that others would be locked in a shop overnight. Generally, the trucks would contain a DeWalt toolkit like the two seized from Ebert. And Ledford testified a sawzall was a common tool used on the jobs Ebert did.

Ledford agreed that Ebert purchased a harness from 3D Metal when he began working, but testified that at some point, Ebert reported it had been stolen. Instead of requiring Ebert to buy a new harness, 3D Metal loaned him a spare. Ledford stated that all of the harnesses had serial numbers to identify them, but that he did not bring the paperwork necessary to identify whether the harness seized from Ebert was the one purchased by Ebert or the one loaned to him. Ledford did testify that the harness loaned to Ebert had not been returned after his employment was terminated.

Ledford explained that 3D Metal's general practice was to mark and number its tools with an inscriber, including its DeWalt toolkits. He stated, however, that during the time of

Ebert's employment, 3D Metal was very busy and was purchasing new tools often, and that not all of the new tools were properly marked. Ledford testified that after Ebert's employment ended, he noticed tools were missing from some of his trucks. Ledford thought the DeWalt toolkit and the Milwaukee sawzall belonged to 3D Metal, "[b]ecause that's the kind of tools that I lost about [the] time [Ebert's employment ended]." He admitted he did not "know specifically" that those items belonged to 3D Metal, and he admitted that both were common items that anyone could buy. He also admitted that he lost "a lot" of tools during the time period of Ebert's employment, because 3D Metal was busy and some of its tools got intermingled with tools belonging to other companies.

At the conclusion of the hearing, the State argued "this is . . . Ebert's motion to get the property back. I didn't see any written proof of anything that he ever bought anything." On the record, the court found that Ebert "has failed to prove that the harness is his." It found the square and level should be returned to Ebert, because "there's been no indication that that was owned by anyone other than" him. It found that Ebert had "failed to sustain his burden of proof as to the DeWalt tool case" and had "failed to meet [his] burden of proof" for the return of the sawzall. The court found the speakers should be returned to Ebert, because "there's no one to dispute" his claim of ownership. In all, the court found that Ebert was entitled to the return of the speakers and the square and level; all other items were ordered returned to 3D Metal. The court entered a written order so disposing of the property on July 2, 2018.

Ebert filed this timely appeal, asserting that the district court abused its discretion in not returning all five items of property to him. We moved the case to our docket on our own motion.

### STANDARD OF REVIEW

[1] The denial of a motion for return of seized property is reviewed for an abuse of discretion.[1]

---

[1] *State v. McGuire*, 301 Neb. 895, 921 N.W.2d 77 (2018).

## ANALYSIS

Ebert's brief challenges the factual findings made by the trial court, but after reviewing the record, we find a more fundamental error occurred below. As explained below, the trial court incorrectly placed the burden of proof on Ebert. We begin our analysis with an overview of the governing statute, after which we discuss our cases applying that statute.

### § 29-818 Applies

Neb. Rev. Stat. § 29-818 (Reissue 2016) provides in relevant part:

> [P]roperty seized under a search warrant . . . shall be safely kept . . . and shall be so kept so long as necessary for the purpose of being produced as evidence in any trial. . . . [T]he court in which [a complaint has been filed in connection to the property] shall have exclusive jurisdiction for disposition of the property . . . and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof.

For the sake of completeness, we note that another statute, Neb. Rev. Stat. § 29-820 (Reissue 2016), also relates to the disposition of seized property. That statute provides that "[u]nless other disposition is specifically provided by law, when property seized or held is no longer required as evidence, it shall be disposed of by the law enforcement agency on such showing as the law enforcement agency may deem adequate . . . ."

[2,3] We recently addressed the interplay between §§ 29-818 and 29-820 in *State v. McGuire*.[2] *McGuire* held that § 29-820 "applies only where the exclusive jurisdiction of a court under § 29-818 has not been invoked."[3] And *McGuire* reiterated that "the court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition."[4] Because a criminal charge was

---

[2] *Id.*

[3] *Id.* at 903, 921 N.W.2d at 84.

[4] *Id.*, citing *State v. Agee*, 274 Neb. 445, 741 N.W.2d 161 (2007).

filed against Ebert, § 29-818 is the statute governing disposition here.

## BURDEN OF PROOF UNDER
## § 29-818 WAS ON STATE

[4-7] Case law applying and interpreting § 29-818 provides guidance on how proceedings related to a motion for the return of seized property are to be conducted. In *McGuire*, we explained:

> "[T]he general rule is well established that upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property. . . . While the government is permitted to seize evidence for use in investigation and trial, such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture. . . . Thus, a motion for the return of property is properly denied only if the claimant is not entitled to lawful possession of the property, the property is contraband or subject to forfeiture, or the government has some other continuing interest in the property."[5]

Regarding the burden of proof in such a proceeding, we explained:

> "When criminal proceedings have terminated, the person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property. *It is long established that a presumption of ownership is created by exclusive possession of personal property and that evidence must be offered to overcome that presumption.* One in possession of property has the right to keep it against all but those with better title, and the 'mere fact of seizure' does not require that 'entitlement be established anew.' Seizure of property from someone is prima facie

---

[5] *Id*. at 906, 921 N.W.2d at 85-86, quoting *Agee, supra* note 4.

evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership."[6]

Based on the foregoing, once the theft by unlawful taking charge against Ebert was dismissed and the State no longer needed the evidence, Ebert was "presumptively entitled to the return of property seized from him unless the State presented evidence justifying its refusal to do so."[7]

Here, Ebert waived the presumption of possession with respect to all but five of the items seized by conceding on the record that such items belonged to 3D Metal. But Ebert sought the return of (1) the nylon harness, (2) the square and level, (3) one of the DeWalt tool cases and included tools, (4) the Milwaukee sawzall, and (5) the JVC speakers, and the State's only reason for opposing return of these items was that they too belonged to 3D Metal. And although it was the State's burden to prove superior title to these items, the record indicates that both the State and the trial court misapplied that burden of proof to Ebert.

To the extent the trial court's ruling was based on a misapplication of the law regarding the burden of proof, we are not able to review it for an abuse of discretion.[8] We therefore reverse, and remand for further proceedings applying the correct legal framework. Because we are remanding the matter, we take this opportunity to address the quantum of proof the State must meet to overcome Ebert's presumption of ownership.

## PREPONDERANCE OF EVIDENCE STANDARD

We have not directly addressed what quantum of proof the State must meet to rebut the presumption of ownership and

---

[6] *Id.* at 906-07, 921 N.W.2d at 86 (emphasis in original), quoting *Agee, supra* note 4.

[7] *Agee, supra* note 4, 274 Neb. at 453, 741 N.W.2d at 168.

[8] See *McGuire, supra* note 1.

show another has superior title. In *State v. Agee*,[9] we held that when criminal proceedings have terminated, the person from whom the property was seized is "presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property." *Agee* also said a "presumption of ownership is created by exclusive possession of personal property" so that evidence must be offered to overcome that presumption.[10] *McGuire* used similar "presumption" language, as noted above. But no case has yet described the quantum of proof necessary to overcome or rebut the presumption.

The Nebraska Evidence Rules provide that "[i]n all cases not otherwise provided for by statute or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."[11] More probable than not is generally a preponderance of the evidence standard,[12] commonly used in civil proceedings.[13]

This description of the quantum of proof necessary to overcome the presumption of ownership is generally consistent with that articulated in the case law of other jurisdictions on which we have relied in our jurisprudence addressing motions for the return of seized property. In the case of *State v. Card*,[14] cited by *Agee*, the Washington Court of Appeals explained the State had the burden to prove a greater right of possession than the one from whom property was seized, and was thus required to prove "by a preponderance of the evidence that the property is stolen property."[15] Similarly, in the case of *DeLoge*

[9] *Agee, supra* note 4, 274 Neb. at 450, 741 N.W.2d at 166.

[10] *Id.*

[11] Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 2016).

[12] *State v. Taylor*, 286 Neb. 966, 840 N.W.2d 526 (2013).

[13] See *State v. Bain*, 292 Neb. 398, 872 N.W.2d 777 (2016).

[14] *State v. Card*, 48 Wash. App. 781, 741 P.2d 65 (1987).

[15] *Id*. at 790, 741 P.2d at 71.

*v. State*,[16] cited by this court in both *Agee* and *McGuire*, the Wyoming Supreme Court held that postconviction motions for the return of seized property are civil proceedings to which a preponderance of the evidence standard would apply.

[8] We have consistently said that the seizure of property from someone is prima facie evidence of that person's right to possession of the property,[17] and we now hold that the presumptive right to possession of seized property may be overcome when superior title in another is shown by a preponderance of the evidence.

## CONCLUSION

It was error as a matter of law to require Ebert, as the proponent of a motion seeking the return of property seized from him, to prove ownership of the property seized. We thus reverse the order and remand this matter for further proceedings applying the correct burden of proof.

Reversed and remanded for
further proceedings.

Freudenberg, J., not participating.

---

[16] *DeLoge v. State*, 156 P.3d 1004 (Wyo. 2007).

[17] See, *McGuire, supra* note 1; *Agee, supra* note 4.