Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/28/2020 09:08 AM CDT

**Herchel H. Huff, appellant, v. Jeff Otto and JWO Trucking, appellees.**

___ N.W.2d ___

Filed July 21, 2020.    No. A-19-536.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the trial court's decision.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Jurisdiction: Appeal and Error.** When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

4. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

5. **Jurisdiction.** Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.

6. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.

7. ____: ____. A court action taken without subject matter jurisdiction is void.

8. **Criminal Law: Search and Seizure: Property.** Property seized in enforcing a criminal law is said to be "in custodia legis," or in the custody of the court.

9. **Trial: Search and Seizure: Evidence.** Property seized and held as evidence is to be kept so long as necessary to make it available as evidence in any trial.

10. **Jurisdiction: Search and Seizure: Evidence.** The court where a complaint has been filed and where seized property was or may be used as evidence has exclusive jurisdiction for disposition of the property and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof.

11. **Criminal Law: Search and Seizure: Property: Evidence.** Property introduced in evidence is in custodia legis, and while it is in custodia legis, it is not subject to civil processes.

12. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

13. **Statutes: Intent.** When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.

14. **Statutes: Legislature: Intent.** Under principles of statutory construction, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible.

15. ____: ____: ____. When words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, or lead to some manifest absurdity or to some consequences which a court sees plainly could not have been intended, or to result manifestly against the general term, scope, and purpose of the law, then the court may apply the rules of construction to ascertain the meaning and intent of the lawgiver, and bring the whole statute into harmony if possible.

16. **Statutes.** Where the same word is used repeatedly in the same act, unless the context requires otherwise, the word is to have the same meaning.

17. **Jurisdiction: Trial: Search and Seizure: Property.** Where invoked, the grant of "exclusive jurisdiction" under Neb. Rev. Stat. § 29-818 (Reissue 2016) gives a criminal trial court exclusive jurisdiction over only two issues: disposition of seized property and determination of rights in seized property.

18. **Courts: Jurisdiction: Legislature.** The "common-law" jurisdiction conferred to the district courts is beyond the power of the Legislature to limit or control.

19. **Justiciable Issues.** A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.

20. **Courts: Justiciable Issues.** A court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting.

21. ____: ____. Ripeness is a justiciability doctrine that courts consider in determining whether they may properly decide a controversy.

22. **Courts.** The fundamental principle of ripeness is that courts should avoid entangling themselves, through premature adjudication, in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated.

23. **Actions: Justiciable Issues: Standing.** The ripeness doctrine is rooted in the same general policies of justiciability as standing and mootness. As compared to standing, ripeness assumes that an asserted injury is sufficient to support standing, but asks whether the injury is too contingent or remote to support present adjudication. It is a time dimension of standing.

24. **Courts: Jurisdiction.** A determination of ripeness depends upon the circumstances in a given case and is a question of degree.

25. **Actions: Jurisdiction.** An appellate court uses a two-part inquiry to determine ripeness: (1) the jurisdictional question of the fitness of the issues for judicial decision and (2) the prudential question concerning the hardship to the parties of withholding court consideration.

26. **Actions.** Generally, a case is ripe when no further factual development is necessary to clarify a concrete legal dispute susceptible to specific judicial relief, as distinguished from an advisory opinion regarding contingent future events.

27. **Criminal Law: Search and Seizure: Property.** The proper procedure to obtain the return of seized property is to apply to the court in which a criminal charge was filed for its return.

28. **Criminal Law: Search and Seizure: Property: Presumptions: Proof.** When criminal proceedings have terminated, the person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property.

29. **Search and Seizure: Property: Proof.** One in possession of property has the right to keep it against all but those with better title, and the mere fact of seizure does not require that entitlement be established anew.

30. **Search and Seizure: Property: Presumptions: Title.** The presumptive right to possession of seized property may be overcome when superior title in another is shown by a preponderance of the evidence.

31. **Actions: Torts: Words and Phrases.** Tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property.
32. **Actions: Jurisdiction.** If an action is not ready, or "ripe" for judicial determination, then the district court lacks subject matter jurisdiction to consider the case.

Appeal from the District Court for Furnas County: James E. Doyle IV, Judge. Appeal dismissed.

Herchel H. Huff, pro se.

Justin M. Daake, of Daake Law Office, L.L.C., for appellees.

Pirtle, Riedmann, and Bishop, Judges.

Bishop, Judge.

## INTRODUCTION

Herchel H. Huff, pro se, sued Jeff Otto and Otto's company, JWO Trucking (referred to herein individually and collectively as "Otto"), for the alleged negligent care of Huff's vehicle while stored on Otto's property during and after a criminal proceeding involving Huff. Huff appeals the decision of the Furnas County District Court dismissing his case due to lack of subject matter jurisdiction. Because exclusive jurisdiction over Huff's vehicle remained with the court in which Huff's criminal case was filed, the district court properly dismissed Huff's civil action.

## BACKGROUND

In October 2007, Huff was driving his Chevrolet Camaro when it struck and killed a jogger. Huff was arrested in connection with the fatal collision and was subsequently convicted of various charges in connection with the accident. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). The Camaro was seized at the scene, and after it was inspected, it was moved to Otto's property where it was stored inside a locked metal

shed. At some point, the Camaro was moved from indoor storage to outdoors.

In July 2018, Huff filed a complaint against Otto due to the "destruction" of his Camaro while it was in Otto's care and which "allow[ed] exculpatory evidence to be destroyed" and denied Huff due process of the law. Huff alleged that Otto's storage of the Camaro was negligent. Huff asked for judgment in his favor and for compensatory and punitive damages. Otto moved to dismiss Huff's complaint for failing to state a claim upon which relief could be granted.

A telephonic hearing took place on October 16, 2018. Huff mentioned motions he said he had filed, but the court noted they were actually filed in a "criminal case, CR07-11." After argument, Otto's motion to dismiss was taken under advisement. On December 31, the motion to dismiss was granted in part and denied in part. The court dismissed Huff's claim of a denial of due process (no alleged state action) and his request for punitive damages (not recoverable under Nebraska law). However, the court found that Huff alleged sufficient facts to set forth a negligence claim; the motion to dismiss was overruled with respect to that one claim.

On January 16, 2019, Huff filed an amended complaint. He identified himself as an inmate and Otto as having been under contract with the Furnas County Sheriff's Department to store seized vehicles. Huff further alleged that on October 3, 2007, Huff was inside his Camaro when it struck and killed a jogger. The Camaro was seized at the scene, and after it was inspected, it was moved to Otto's property where it was stored inside a locked metal shed. Huff attached and incorporated into his amended complaint an affidavit by a sheriff. The sheriff visited Otto's property in 2011 and found Huff's vehicle outside with the "T-tops" off and the windows down; Otto informed the sheriff that Huff's vehicle was moved to an outdoor storage pasture "'after the trial was over.'" Huff's vehicle remains there. Huff believed his Camaro was left outdoors to "destroy exculpatory evidence." Huff claimed that his

Camaro and its contents were "destroyed" while in the care of Otto in violation of Neb. Rev. Stat. §§ 60-2401 to 60-2411 (Reissue 2010) (statutes related to vehicles being towed from restricted parking lots).

Otto again filed a motion to dismiss. At the end of a telephonic hearing on January 30, 2019, Otto's motion to dismiss was taken under advisement. In February, Huff filed a "Motion for County to Pay for Private Investigator" (he wanted the Camaro photographed) and a "Motion for Order to Preserve Evidence ( Camaro)," in which he alleged that the court was "well aware" that his criminal "appeals are still being litigated" so that his Camaro "must be inside a secured building."

On May 2, 2019, the district court entered an "Order of Dismissal." It understood Huff's amended complaint set forth two causes of action, one for relief under §§ 60-2401 to 60-2411 and one for the negligent care of his vehicle while it was in the possession of Otto pending the prosecution of Huff for "motor vehicle homicide." The district court took judicial notice of district court case "*State of Nebraska v. Herchel H. Huff*" at "CR07-11," the criminal case in which Huff was convicted and sentenced for manslaughter, motor vehicle homicide, tampering with a witness, and refusal to submit to a chemical test related to the fatal collision on October 3, 2007. The district court found that the criminal case was still an ongoing action as of May 2, 2019, because Huff was putting forth new claims of innocence and pursuing postconviction proceedings. The court found that the evidence that served as the basis for Huff's initial conviction, i.e., the Camaro, had to be preserved for a possible retrial in the event Huff obtained one. Further, the district court found that the Camaro, the subject matter of the instant case, was in custodia legis or, in other words, under the control of the court overseeing Huff's criminal case. Finally, noting that the absence of subject matter jurisdiction may be raised at any time, the district court found it did not have jurisdiction to

decide the issues raised by Huff in his amended complaint. The district court stated in its order:

> Thus, while Huff may have a claim for the negligent care of the Camaro during its bailment, such claim is not ripe and cannot be decided by the court because the subject matter of his claims, i.e., the Camaro, is currently in the control and custody of the court by reason of the proceedings in [the criminal case]. Because the claim is not ripe and because the court does not have jurisdiction over the matter of the disposition of the Camaro until the proceedings in [the criminal case] are finally resolved, the court finds Huff's amended complaint must be dismissed.

Other pending motions and objections generally related to Huff's various discovery requests and other motions filed by Huff were declared moot by reason of dismissal of the case and were also dismissed.

Huff, pro se, appeals.

## ASSIGNMENTS OF ERROR

Huff assigns that the district court erred by (1) dismissing his amended complaint "by failing to allow [him] his witnesses under the Subpoena Duces Tecum and to take deposition[s]"; (2) denying his amended complaint "before appl[y]ing the standard" in "§60-2406"; (3) violating Huff's due process rights "by failing to order [Otto] to preserve the [C]amaro which was potentially exculpatory evidence, and where several motions were filed"; (4) applying the "custodia legis standard, after the [A]ttorney [G]eneral said he was releasing the car, and for the prosecutorial vindictiveness"; and (5) denying motions to recuse Otto's attorney and the assistant Attorney General (not counsel to any party in this action).

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion

independent of the trial court's decision. See *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019).

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018).

## ANALYSIS

[3] When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *State v. McGuire*, 301 Neb. 895, 921 N.W.2d 77 (2018). Thus, the existence of our jurisdiction depends on whether the district court had jurisdiction. *Id.*

[4-7] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017). Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Id.* Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. *Id.* A court action taken without subject matter jurisdiction is void. *Id.*

The district court noted that Huff's convictions in the criminal case arose out of Huff's operation of his Camaro. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011) (setting forth detailed facts underlying Huff's convictions). The Camaro involved in the criminal case is without question the subject of the present civil case. According to Huff's amended complaint, the Camaro has been in the continuing care of Otto

pursuant to a contract with law enforcement ever since it was seized at the scene of the fatal 2007 collision and was subjected to a brief investigation.

## Camaro in Custodia Legis

[8-11] The district court correctly found that the Camaro was in custodia legis. Property seized in enforcing a criminal law is said to be "in custodia legis," or in the custody of the court. *State v. Agee*, 274 Neb. 445, 741 N.W.2d 161 (2007). Neb. Rev. Stat. § 29-818 (Reissue 2016) establishes the basic framework for dealing with seized property, and it provides, in relevant part:

> [P]roperty seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same, unless otherwise directed by the judge or magistrate, and shall be so kept so long as necessary for the purpose of being produced as evidence in any trial. Property seized may not be taken from the officer having it in custody by replevin or other writ so long as it is or may be required as evidence in any trial, nor may it be so taken in any event where a complaint has been filed in connection with which the property was or may be used as evidence, and the court in which such complaint was filed shall have exclusive jurisdiction for disposition of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof.

Several important principles follow from this statutory framework, including a jurisdictional precept. *State v. McGuire, supra*. First, an officer seizing property pursuant to a warrant must safely keep the seized property, unless otherwise directed by a judge or magistrate. *Id.* Second, the seized property is to be kept so long as necessary to make it available as evidence in any trial. *Id.* Third, so long as the seized property may be required as evidence in a trial, it may not be taken from the officer by means of a writ of replevin. *Id.* Fourth,

where a complaint has been filed asserting a charge where the property was or may be used as evidence, a writ of replevin would not lie to take the property, even if the property was no longer required in evidence. *Id.* And, the court where a complaint has been filed and where seized property was or may be used as evidence has exclusive jurisdiction for disposition of the property and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof. See *id*. The proper procedure to obtain the return of seized property is to apply to the court for its return. *State v. Agee, supra*. See, also, *State v. Allen*, 159 Neb. 314, 66 N.W.2d 830 (1954) (property introduced in evidence is in custodia legis, and while it is in custodia legis, it is not subject to civil processes).

While it appears that Huff has filed a motion in the criminal case to have the Camaro returned to him, that motion was apparently still pending when this civil action was taken up by the district court on Otto's motion to dismiss. According to the district court, Huff filed a "motion for DNA testing of the Camaro" and other filings "relating to the Camaro" in the criminal case in March 2018; the motions were denied except for a "motion for the return of the Camaro," which was not ruled upon. The parties do not contest these findings by the district court.

The record shows that since October 3, 2007, the Camaro has been property seized for the purpose of enforcing criminal laws in Huff's ongoing criminal case; therefore, the Camaro has been and remains to be in the custody of the court in the criminal case. See *State v. Agee, supra*. As such, the district court in Huff's separate criminal case continues to have exclusive jurisdiction to determine the rights to the Camaro and the Camaro's disposition. See § 29-818.

Further, § 29-818 mandates that the seized property, the Camaro, is to be kept so long as necessary to make it available as evidence in "any trial." Postconviction proceedings are the equivalent of a "trial" for purposes of § 29-818. *State*

*v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017). One motion, among others, pending in Huff's criminal case at the time the district court ordered dismissal of the instant case was one for postconviction relief. Huff understands that his vehicle was being retained "in case of a retrial." Brief for appellant at 21. He even claims that a motion to preserve "the evidence," i.e., the Camaro, was granted on August 7, 2019 (necessarily, in the criminal case). *Id.* at 22. However, there is nothing in the record to indicate any order being entered in the criminal case granting the return of the Camaro to Huff or otherwise showing that the court in the criminal case terminated its exclusive jurisdiction over the vehicle or its contents.

The district court found that because the Camaro was in the custody of the court in the criminal case pursuant to § 29-818, it "does not have jurisdiction in this [civil] case to decide the issues raised by Huff in his amended complaint." In support of that determination, the district court cited to the legal proposition that the absence of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. Therefore, the district court appeared to tie its lack of subject matter jurisdiction, at least in part, to § 29-818. However, the district court went on to say that Huff's claim for negligent care of the Camaro "is not ripe and cannot be decided by the court because the subject matter of his claims, i.e., the Camaro, is currently in the control and custody of the court by reason of the proceedings in the [criminal case]." The district court also concluded that it would not have jurisdiction "over the matter of the disposition of the Camaro until the proceedings in [the criminal case] are finally resolved."

To the extent the district court read § 29-818 broadly to mean that if the exclusive jurisdiction of a criminal court has been invoked under § 29-818 regarding certain seized property, then another court is precluded altogether from exercising subject matter jurisdiction over any other action involving the same seized property, we do not agree. On the other

hand, the district court also stated that Huff's claim "is not ripe," which can also serve as a basis for lack of subject matter jurisdiction. We ultimately agree with the district court that it lacked subject matter jurisdiction over the civil action based on Huff's claim not being ripe, but we first address the jurisdictional aspects of § 29-818.

## Jurisdiction Over Camaro
## Pursuant to § 29-818

[12-15] In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Cookson v. Ramge*, 299 Neb. 128, 907 N.W.2d 296 (2018). When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). Under principles of statutory construction, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible. *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009). When words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, or lead to some manifest absurdity or to some consequences which a court sees plainly could not have been intended, or to result manifestly against the general term, scope, and purpose of the law, then the court may apply the rules of construction to ascertain the meaning and intent of the lawgiver, and bring the whole statute into harmony if possible. *Pan v. IOC Realty Specialist*, 301 Neb. 256, 918 N.W.2d 273 (2018). See, also,

*Vasquez v. CHI Properties*, 302 Neb. 742, 925 N.W.2d 304 (2019) (in construing statute, appellate court will, if possible, try to avoid construction which would lead to absurd, unconscionable, or unjust results).

As set forth previously, § 29-818 provides, as relevant here, "the court in which such complaint was filed shall have exclusive jurisdiction for disposition of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof." Section 29-818 is located in a series of Nebraska statutes on criminal procedure titled "Disposition of Seized Property." See Neb. Rev. Stat. §§ 29-818 to 29-829 (Reissue 2016). "This series or collection of statutes, as the title suggests, addresses various rules pertaining to the possession, control, suppression, disposition, and return of property seized in connection with a criminal proceeding." *State v. Cox*, 3 Neb. App. 80, 88, 523 N.W.2d 52, 59 (1994). Sections 29-818 to 29-820 specifically concern seized property. The area where § 29-818 is found suggests that the grant of exclusive jurisdiction in the statute is meant to relate only to jurisdiction over seized property.

The language at issue in § 29-818 has been restated by the Nebraska Supreme Court in the literal and narrow sense in which it appears in the statute. See, *State v. McGuire*, 301 Neb. 895, 902, 921 N.W.2d 77, 83 (2018) ("a court where a complaint has been filed and where seized property was or may be used as evidence has 'exclusive jurisdiction for disposition of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof'"); *State v. Agee*, 274 Neb. 445, 448, 741 N.W.2d 161, 165 (2007) ("court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition"). All five principles that follow from § 29-818 relate to the custody of seized property. See *State v. McGuire, supra* (listing principles of § 29-818). Thus, by its own terms, the jurisdictional precept in § 29-818 is limited in scope.

[16] Under § 29-819, where seized property is no longer required as evidence in the prosecution of any complaint or information, "the court which has *jurisdiction of such property* may transfer the same to the jurisdiction of any other court . . . where it is shown to the satisfaction of the court that such property is required as evidence in any prosecution in such other court." (Emphasis supplied.) A harmonious reading of §§ 29-818 and 29-819 is that references to jurisdiction in each are to jurisdiction over seized property, not subject matter jurisdiction. See, *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009) (components of series of statutes pertaining to certain subject matter may be conjunctively considered and construed to determine legislative intent so different provisions of act are consistent, harmonious, and sensible); *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986) (where same word is used repeatedly in same act, unless context requires otherwise, word is to have same meaning). We note that jurisdiction is not explicitly mentioned in § 29-820, which relates to the manner of disposition of different kinds of property. See, also, *State v. McGuire, supra* (holding that § 29-820 applies only where exclusive jurisdiction of court under § 29-818 has not been invoked).

Regarding the plain language of §§ 29-818, 29-819, and 29-820, this court stated:

> We believe that the obvious purpose of those provisions in the foregoing statutes which define which court has "jurisdiction" *over the seized property* is to assure safekeeping and custody of the property, as well as identifying which court has the authority, should the issue arise, to dispose of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof. Such provisions also outline a mechanism enabling the physical transfer of seized property from one court to the other (when such a transfer is necessary) and assure accountability for the property.

*State v. Cox*, 3 Neb. App. 80, 89, 523 N.W.2d 52, 59 (1994) (emphasis supplied). This court found that another statute in the series (§ 29-827, since repealed), which also related to the disposition of seized property, was similar to § 29-819; we concluded, "§ 29-827 is concerned with *jurisdiction over the property*, as distinguished from jurisdiction over the case." *State v. Cox*, 3 Neb. App. at 89, 523 N.W.2d at 59-60 (emphasis supplied). We noted that such a construction harmonized the now-repealed section with the "concept and purpose of 'jurisdiction' over seized property as that term is used throughout this series of statutes and that such interpretation is reasonable to accomplish the objectives sought by this legislation." *Id.* at 90, 523 N.W.2d at 60.

[17,18] We conclude that, where invoked, the grant of "exclusive jurisdiction" under § 29-818 gives a criminal trial court exclusive jurisdiction over only two issues: disposition of seized property and determination of rights in seized property. Therefore, even though the Camaro is in custody of the court in the criminal case, § 29-818 itself does not bar the district court from exercising subject matter jurisdiction over the claims in Huff's amended complaint. There is no question that district courts have general jurisdiction over common-law negligence claims such as the one raised in Huff's amended complaint. See, Neb. Const. art. V., § 9 (district courts have common-law jurisdiction); Neb. Rev. Stat. § 24-302 (Reissue 2016) (district courts have general, original, and appellate jurisdiction in all matters civil and criminal, except where otherwise provided); *Kotrous v. Zerbe*, 287 Neb. 1033, 846 N.W.2d 122 (2014) ("common-law" jurisdiction conferred to district courts is beyond power of Legislature to limit or control).

Therefore, to the extent the district court's order can be read to mean it lacked subject matter jurisdiction because of § 29-818, we do not agree that § 29-818 requires such a determination, but as previously stated, we do agree that the ripeness doctrine supports the district court's dismissal of Huff's action.

RIPENESS DOCTRINE

[19,20] A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement. *Stewart v. Heineman*, 296 Neb. 262, 892 N.W.2d 542 (2017). A court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting. *Id*.

[21-23] Ripeness is a justiciability doctrine that courts consider in determining whether they may properly decide a controversy. *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018). The fundamental principle of ripeness is that courts should avoid entangling themselves, through premature adjudication, in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated. *Id*. The ripeness doctrine is rooted in the same general policies of justiciability as standing and mootness. *Stewart v. Heineman, supra*. As compared to standing, ripeness assumes that an asserted injury is sufficient to support standing, but asks whether the injury is too contingent or remote to support present adjudication. *Id*. It is a time dimension of standing. *Id*. (standing requires litigant have such personal stake in outcome of controversy as to warrant invocation of court's jurisdiction and justify exercise of court's remedial powers on litigant's behalf).

[24-26] A determination of ripeness depends upon the circumstances in a given case and is a question of degree. *Shepard v. Houston*, 289 Neb. 399, 855 N.W.2d 559 (2014). An appellate court uses a two-part inquiry to determine ripeness: (1) the jurisdictional question of the fitness of the issues for judicial decision and (2) the prudential question concerning the hardship to the parties of withholding court consideration. See *Stewart v. Heineman, supra*. This approach is adopted from the Eighth Circuit, which has explained that

"[t]he 'fitness for judicial decision' inquiry goes to a court's ability to visit an issue. . . . [I]t safeguards against judicial review of hypothetical or speculative disagreements. . . .

"In addition to being fit for judicial resolution, an issue must be such that delayed review will result in significant harm. 'Harm' includes both the traditional concept of actual damages—pecuniary or otherwise—and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution."

*City of Omaha v. City of Elkhorn*, 276 Neb. 70, 80, 752 N.W.2d 137, 145-46 (2008) (quoting *Nebraska Public Power Dist. v. MidAmerican Energy*, 234 F.3d 1032 (8th Cir. 2000)). Because ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the district court's decision that must govern. *Shepard v. Houston, supra*. Generally, a case is ripe when no further factual development is necessary to clarify a concrete legal dispute susceptible to specific judicial relief, as distinguished from an advisory opinion regarding contingent future events. *Id*.

From what we can tell, the circumstances of Huff's criminal case have not changed, as pertinent here, since the district court entered its order dismissing this civil case. In his criminal case, in June 2019, Huff appealed the denial of a postconviction motion (among other things). We affirmed the orders of the district court from which Huff appealed. See *State v. Huff*, No. A-19-537, 2020 WL 2374884 (Neb. App. May 12, 2020) (selected for posting to court website). Of relevance here, we concluded from our record in that appeal that the district court had not yet ruled on a motion which Huff had filed in the criminal case on August 17, 2018, for the return of seized property, including the Camaro and its contents. Therefore, we did not consider Huff's claim alleging that the district court erred in dismissing his motion for the return of seized property. Huff had also asserted that the district court erred in failing to order the State to preserve the Camaro; we

noted that in his appellate brief he referred to an August 7, 2019, order in which the district court granted his motion to preserve the Camaro. We did not address the merits of Huff's claim regarding that motion because the assigned error was not properly before us. Importantly, there is still no indication that the criminal court has decided the disposition of the Camaro and its contents or determined the rights in that seized property, which continues to be rightfully held in the custody of the criminal court.

A closer review of the procedure involved for a person seeking the return of seized property that is held in the custody of a criminal court is helpful to the first part of our ripeness inquiry—the jurisdictional question of whether the issues in Huff's civil case are fit for judicial decision.

[27] The proper procedure to obtain the return of seized property is to apply to the court in which a criminal charge was filed for its return. See *State v. Agee*, 274 Neb. 445, 741 N.W.2d 161 (2007). See, also, § 29-818. But see *Dortch v. City of Omaha*, 26 Neb. App. 244, 918 N.W.2d 637 (2018) (civil replevin action may be available remedy for return of seized property when certain investigation concerning seized property never resulted in charge being filed).

[28-30] Case law applying and interpreting § 29-818 provides guidance on how proceedings related to a motion for the return of seized property are to be conducted. *State v. Ebert*, 303 Neb. 394, 929 N.W.2d 478 (2019). When criminal proceedings have terminated, the *person from whom property was seized is presumed to have a right to its return*, and the burden is on the government to show that it has a legitimate reason to retain the property. *Id.* One in possession of property has the right to keep it against all but those with better title, and the mere fact of seizure does not require that entitlement be established anew. *Id.* A motion for the return of seized property is properly denied only if (1) the claimant is not entitled to lawful possession of the property (i.e., government presents evidence of cognizable claim or right of possession adverse

to that of movant-defendant), (2) the property is contraband or subject to forfeiture, or (3) the government has some other continuing interest in the property (e.g., ongoing investigation, tax lien, imposed fine, or restitution order). See, *id.*; *State v. Agee, supra*. See, also, *State v. Ebert, supra* (presumptive right to possession of seized property may be overcome when superior title in another is shown by preponderance of evidence).

As discussed previously, the district court in Huff's criminal case has exclusive jurisdiction over the disposition of the Camaro and its contents, as well as the determination of the rights therein under § 29-818; thus, Huff can seek return of his seized property through application to the criminal court. See *State v. Agee, supra*. Once criminal proceedings have terminated, a date yet to be known, Huff will have a presumptive right to the return of his seized property currently held in the custody of the criminal court, unless the State meets its burden to overcome that presumption as to all or some of the seized property. See *State v. Ebert, supra*. Regardless, the presumptive right to the return of such property does not lie until Huff's criminal proceedings are over. See *id.* When that time comes, the criminal court will be in a position to exercise its exclusive jurisdiction over the seized property and rule on any application for its return following the case law described above as it relates to the Camaro and its contents. Additionally, the State would be afforded the opportunity to rebut a presumption of Huff's rights in the seized property.

[31] Neither the district court nor this court can speculate as to when Huff's criminal proceedings will end. Nor would it be appropriate to hypothesize the outcome of any motion for the return of the Camaro and personal property within it, because to do so would overstep the exclusive jurisdiction of the criminal court under § 29-818 over such matters. Therefore, in this civil action at this time, we cannot accept as fact the parties' apparent assumption that Huff has a present ownership interest in the Camaro and its contents, which

Huff claims have been "destroyed" during the time they have been held in custody. Until the criminal court decides the proper disposition of the seized property and determines rights therein, Huff's negligence claim regarding the same property is not ripe as the negligence claim is contingent on whether Huff has a present possessory interest in all or some of that property. See, *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018) (courts should avoid entangling themselves in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated); *Stewart v. Heineman*, 296 Neb. 262, 892 N.W.2d 542 (2017) (ripeness is time dimension of standing); *L. J. Vontz Constr. Co. v. State*, 230 Neb. 377, 432 N.W.2d 7 (1988) (tort actions arise from breach of duty imposed by law and protect plaintiff's interest or right to be free from another's conduct which causes damage or loss to *plaintiff's* person or *property*). We also note that the storage of the seized property and its condition may change, for better or worse, by the time the criminal court makes those decisions. Further factual development, which can only occur in the criminal court, is therefore necessary to the potential civil negligence dispute. See *Shepard v. Houston*, 289 Neb. 399, 855 N.W.2d 559 (2014) (generally, case is ripe when no further factual development is necessary to clarify concrete legal dispute susceptible to specific judicial relief). The issues in Huff's civil case are not fit for present judicial review.

Regarding the second part of the ripeness inquiry, we cannot find that Huff will experience significant hardship to the delay of his civil negligence action where, depending on how matters are resolved in the criminal court, he may not have a right to pursue his civil negligence action in the first place. Also, it is evident that Huff's criminal proceedings have continued for years at his insistence. Given the circumstances here, any hardship to Huff by a delayed review of his civil negligence action is minimal.

[32] Having considered the jurisdictional and prudential questions necessitated under the two-part ripeness test, we conclude that Huff's civil case is not ripe for judicial review. For that reason, the district court lacked subject matter jurisdiction to consider Huff's civil case. See *City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137 (2008) (if action is not ready, or "ripe" for judicial determination, then district court lacks subject matter jurisdiction to consider case). Accordingly, we agree with the district court's ultimate conclusion that it lacked subject matter jurisdiction at this time, albeit our discussion focused on different grounds, at least in part. See *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017) (when record demonstrates decision of trial court is correct, although such correctness is based on different grounds from those assigned by trial court, appellate court will affirm).

Accordingly, the district court properly dismissed Huff's civil action for lack of jurisdiction. And when a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks the power to adjudicate the merits of the claim. See *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

## CONCLUSION

For the foregoing reasons, we dismiss this appeal.

Appeal dismissed.