Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/10/2026 08:08 AM CDT

State of Nebraska, appellee, v. Christopher
McKinney, appellee, and David McKinney,
intervenor-appellant.

___ N.W.3d ___

Filed April 10, 2026.    No. S-24-881.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law.
2. **Interventions.** Whether a party has the right to intervene in a proceeding is a question of law.
3. **Statutes.** Statutory interpretation is a question of law.
4. **Courts: Appeal and Error.** An appellate court independently decides questions of law.
5. **Search and Seizure: Appeal and Error.** The denial of a motion for return of seized property is reviewed for an abuse of discretion.
6. **Sentences: Appeal and Error.** An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.
7. **Criminal Law: Search and Seizure: Property.** Property seized in enforcing a criminal law is said to be "in custodia legis," or in the custody of the court.
8. **Search and Seizure: Property: Evidence.** The seizure and retention of property as evidence in no manner denies or affects the title of the true owner, but simply postpones his or her right of possession until the exigencies of the prosecution are satisfied.
9. **Police Officers and Sheriffs: Search and Seizure: Property.** Property seized and held as evidence is to be safely kept by the officer seizing it unless otherwise directed by the court, and the officer is to exercise reasonable care and diligence for the safekeeping of the property.

10. **Trial: Search and Seizure: Evidence.** Property seized and held as evidence shall be kept so long as necessary for the purpose of being produced as evidence at trial.

11. **Search and Seizure: Property.** Upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property.

12. ____: ____. The proper procedure to obtain the return of seized property is to apply to the court for its return.

13. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

14. **Standing: Jurisdiction: Parties.** Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.

15. **Standing: Parties.** To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

16. **Interventions: Pleadings.** A court has authority to exclude from the case an intervenor whose pleadings do not disclose a direct interest in the matter in litigation.

17. **Courts: Jurisdiction: Search and Seizure: Property.** The court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition.

18. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

19. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.

20. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.

21. **Property.** Derivative contraband comprises objects which are not inherently illegal, but are used in an unlawful manner.

22. **Criminal Law: Search and Seizure: Property: Words and Phrases.** Property seized in enforcing a criminal law falls within the category of derivative contraband if, but not only if, in fact it was used in a manner consistent with the definition in Neb. Rev. Stat. § 28-1205(6)(d) (Supp. 2025).

23. **Judgments: Appeal and Error.** An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.

24. **Criminal Law: Search and Seizure: Property: Presumptions: Proof.** When criminal proceedings have terminated, the person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property.

25. **Search and Seizure: Property: Proof.** Seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership.

26. **Property: Presumptions: Evidence.** A presumption of ownership is created by exclusive possession of personal property, and evidence must be offered to overcome that presumption.

27. **Search and Seizure: Property: Presumptions.** The presumptive right to possession of seized property may be overcome when superior title in another is shown by a preponderance of the evidence.

28. **Search and Seizure: Property.** A motion for the return of seized property is properly denied only if the claimant is not entitled to lawful possession of the property, the property is contraband or subject to forfeiture, or the government has some other continuing interest in the property.

Appeal from the District Court for Otoe County: Julie D. Smith, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Trevin H. Preble, of Preble Law Firm, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Cassel, J.

## I. INTRODUCTION

From a district court's order for the destruction of firearms and ammunition seized in a criminal case,[1] an intervening

---

[1] See Neb. Rev. Stat. §§ 29-818 and 29-820 (Reissue 2016).

transferee appeals. Two issues appear. First, did the transferee have standing? Because he claimed ownership of the seized property, he did. Second, was the property contraband per se or, alternatively, derivative contraband, despite the transfer? As to all items but one, they were derivative contraband, and we affirm the order for their destruction. As to the remaining item, we must reverse the order and remand the cause for further proceedings to determine the threshold question of whether the transferee satisfied his burden of proving the existence of a transfer of ownership. From that determination, the proper disposition will naturally follow.

## II. BACKGROUND

In this section, we set forth basic information. Additional details follow in the analysis.

### 1. Conviction and Direct Appeal

The underlying criminal case stemmed from an encounter on January 12, 2022, between Christopher McKinney and law enforcement at his home. After an armed standoff, law enforcement executed search and arrest warrants and seized numerous firearms and thousands of rounds of ammunition.

Christopher pled no contest to terroristic threats, a Class IIIA felony,[2] on April 17, 2023. In exchange, the State dismissed other charges, including use of a firearm to commit a felony.[3] The district court accepted Christopher's plea and found him guilty of terroristic threats. On June 5, it sentenced him to jail time and post-release supervision.

On direct appeal, the Nebraska Court of Appeals affirmed Christopher's conviction and sentence.[4]

---

[2] See Neb. Rev. Stat. § 28-311.01 (Reissue 2016).

[3] See Neb. Rev. Stat. § 28-1205 (Supp. 2025).

[4] See *State v. McKinney*, No. A-23-503, 2024 WL 561946 (Neb. App. Feb. 13, 2024) (selected for posting to court website).

## 2. Petition for "Order for Destruction" and Motion to Intervene

After Christopher's direct appeal concluded, the State filed a petition seeking an "Order for Destruction." The petition set forth a list of specific weapons and ammunition that remained in law enforcement's possession and referred to "other loose ammunition not specifically listed." The State asserted that the weapons and ammunition were used in the commission of a crime and that they were no longer required as evidence. It requested the court to order the destruction of all items.

David McKinney moved to intervene, and the court held a hearing on both the State's petition and David's motion.

In an affidavit received in evidence, David claimed that he was the owner of the seized property. He alleged that "[o]n or about April 1, 2023, Christopher . . . *gave* me all of his interest in the property that was seized by law enforcement from him on or about January 12, 2022." (Emphasis supplied.) David alleged that he was Christopher's father and that he could lawfully possess firearms. David asked that the property be returned to him. Attached to the affidavit was a list of the property.

In other words, the date on which Christopher "gave" the property to David—April 1, 2023—was after the State seized it and charged Christopher but before Christopher's no contest plea and felony conviction and his later sentencing.

The State objected to David's motion. Although it did not dispute that David could lawfully possess firearms, the State argued that he did not have an ownership interest in the seized property and therefore lacked standing. Relying upon § 29-818, it reasoned that the court had exclusive jurisdiction over the property's disposition and that Christopher lacked the authority to "transfer ownership" to David.

Turning to the petition, the State offered a detailed list of all property seized from the scene, as well as a document sorting the firearms into four general categories—those seen by law enforcement during the standoff, those specifically mentioned

by Christopher during the standoff, those that appeared to be positioned or "[s]taged" in the residence as part of his actions during the standoff, and others. Additionally, the State offered law enforcement reports, photographs, and body camera footage of the scene.

The State argued that the seized property could not be returned for three reasons. Again relying on § 29-818, it maintained that Christopher did not have the authority to transfer his ownership of the seized property to David. Second, it argued that as a felon from the conviction arising out of the underlying events, Christopher was now prohibited from possessing firearms,[5] making the firearms "per se contraband." Finally, it argued that the property was used in the commission of a crime and therefore was derivative contraband.

Christopher's direct appeal counsel appeared on behalf of both Christopher and David to oppose the petition. He argued that Christopher, as the owner of the property at the time of the seizure, had the authority to transfer it to David before sentencing and that David can legally possess the property. He also expressed doubt that all of the seized property was contraband. Among other things, he highlighted that the State's factual basis for Christopher's crime had only one mention of a firearm—stating that he pointed a single shotgun at law enforcement. Counsel requested the court to take judicial notice of the affidavit in support of Christopher's arrest warrant, which the State had offered as the factual basis to support Christopher's plea. Additionally, he presented an excerpt of the verbatim transcript of Christopher's plea hearing and the affidavit of David, discussed above.

Ruling from the bench, the district court sustained David's motion to intervene, though it noted that David would not necessarily be entitled to the release of the seized property. The court entered an order consistent with its ruling from the bench and took the State's petition under advisement.

---

[5] See Neb. Rev. Stat. § 28-1206 (Supp. 2025).

### 3. District Court's Order

The court entered an "Order for Destruction of Firearms and Ammunition," in which it agreed with the State that Christopher could not transfer his interest in the seized property to David and that the property was contraband. We will set forth its detailed factual findings and reasoning in the analysis section below. The court granted the State's petition in full and ordered that all seized property be destroyed.

Within 30 days of the order, David filed this appeal. The State filed a motion for summary dismissal for lack of jurisdiction, which the Court of Appeals overruled. Then, the State filed a petition to bypass review by the Court of Appeals,[6] which we granted.

## III. ASSIGNMENTS OF ERROR

David sets forth two assignments of error. He challenges the district court's determinations that (1) Christopher could not transfer the seized property to him and (2) the seized property was used in the commission of a crime. On appeal, the State raises the same standing argument asserted below.

## IV. STANDARD OF REVIEW

[1-4] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law.[7] Likewise, whether a party has the right to intervene in a proceeding[8] and statutory interpretation[9] are questions of law. An appellate court independently decides questions of law.[10]

---

[6] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2024).

[7] *Nebraska Firearms Owners Assn. v. City of Lincoln*, 319 Neb. 723, 24 N.W.3d 891 (2025).

[8] *Harchelroad v. Harchelroad*, 315 Neb. 351, 996 N.W.2d 263 (2023).

[9] *State v. Brooks*, 319 Neb. 377, 22 N.W.3d 640 (2025).

[10] *Bassinger v. Nebraska Heart Hosp.*, 282 Neb. 835, 806 N.W.2d 395 (2011).

[5,6] The denial of a motion for return of seized property is reviewed for an abuse of discretion.[11] An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.[12]

## V. ANALYSIS

### 1. LAW ON PROPERTY "IN CUSTODIA LEGIS"

[7,8] Property seized in enforcing a criminal law is said to be "in custodia legis," or in the custody of the court.[13] The common law addressed property seized and held as evidence in a criminal case.[14] Courts elsewhere have long recognized that the seizure and retention of property as evidence "in no manner denies or affects the title of the true owner, but simply postpones his [or her] right of possession until the exigencies of the prosecution are satisfied."[15]

[9,10] Based upon §§ 29-818 and 29-820, we have stated several principles governing seized property that codify and extend the common law. Property seized and held as evidence is to be safely kept by the officer seizing it unless otherwise directed by the court, and the officer is to exercise reasonable care and diligence for the safekeeping of the property.[16] Property seized and held as evidence shall be kept so long as necessary for the purpose of being produced as evidence at trial.[17]

---

[11] *State v. Allen*, 318 Neb. 627, 17 N.W.3d 794 (2025).

[12] *State v. Jackson*, 320 Neb. 609, 29 N.W.3d 232 (2026).

[13] *State v. Allen, supra* note 11.

[14] See, *Good v. Police Commissioners*, 137 Md. 192, 112 A. 294 (1921); *Azparren v. Ferrel*, 44 Nev. 157, 191 P. 571 (1920); *Commission and Stock Co. v. Moore*, 13 App. D.C. 78 (1898).

[15] *Commission and Stock Co. v. Moore, supra* note 14, 13 App. D.C. at 85.

[16] *State v. Allen, supra* note 11.

[17] *Id.*

[11,12] Upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property.[18] The proper procedure to obtain the return of seized property is to apply to the court for its return.[19] Although some states have a specific statutory procedure,[20] Nebraska does not.

Regarding firearms, ammunition, explosives, bombs, and like devices, § 29-820 establishes two categories having separate directions. Such items "which have been used in the commission of crime" are to be destroyed.[21] Those that have not been used in the commission of crime, that have not been defaced or altered in any manner that violates any state or federal law, that may have a lawful use and be lawfully possessed, and that are not seized incident to an arrest for domestic assault are to be restored to the owner.[22] These directions guide a court in its disposition of such items under § 29-818.

### 2. State's Jurisdictional Argument Lacks Merit

[13] We must address the State's jurisdictional argument. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[23] The State contends that David lacked standing to intervene and that, consequently, this court lacks jurisdiction of his appeal.

[14-16] To do so, we recall principles of standing applying, respectively, to a party commencing litigation and to a person

---

[18] *Id.*

[19] *State v. Zimmer*, 311 Neb. 294, 972 N.W.2d 57 (2022).

[20] See 79 C.J.S. *Searches* § 287 (2017).

[21] § 29-820(1)(e).

[22] See § 29-820(1)(f).

[23] *Powers v. Board of Directors of Elmwood Tower*, 320 Neb. 906, 31 N.W.3d 599 (2026).

intervening in a suit. Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[24] To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[25] Similarly, a court has authority to exclude from the case an intervenor whose pleadings do not disclose a direct interest in the matter in litigation.[26] With these principles in mind, we turn to the parties' rationales.

(a) Parties' Rationales

The State bases its standing argument upon § 29-818, which provides, in relevant part:

> [P]roperty seized . . . shall be so kept so long as necessary for the purpose of being produced as evidence in any trial. . . . [T]*he court in which such complaint was filed shall have exclusive jurisdiction for disposition of the property . . . and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof.*

(Emphasis supplied.)

The State contends that § 29-818 barred Christopher from transferring his ownership interest to David without first obtaining the court's approval. And, it asserts that because David acquired no ownership interest in the property, he lacked standing to intervene in this matter.

David distinguishes ownership from possession. He concedes that Christopher could not possess the property while the district court had its custody. But David maintains that

---

[24] *Kellogg v. Mathiesen*, 320 Neb. 223, 26 N.W.3d 651 (2025).

[25] *Id.*

[26] *Jennings Plant Servs. v. Ellerbrock-Norris Agency*, 318 Neb. 138, 14 N.W.3d 10 (2024).

Christopher's ownership interest had not, at the time of the purported transfer, been lost.

### (b) § 29-818 Did Not Completely Bar Transfer of Ownership Interest

[17] Pursuant to § 29-818, the court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition.[27] Because a criminal charge was filed against Christopher, we agree with the State that § 29-818 governs jurisdiction here. But the State goes further.

The State reasons that the court's "exclusive jurisdiction for disposition"[28] precluded Christopher from transferring his interest to David during the period from seizure to disposition. It therefore asserts that David lacked the requisite legal interest to intervene. It reads too much into § 29-818.

[18-20] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[29] An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.[30] It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.[31]

Absent statutory language to the contrary, we decline to hold that § 29-818 completely barred Christopher from transferring any of his ownership interest without the court's prior approval. The statute plainly states that seized property must be "kept so long as necessary for the purpose of being

---

[27] *State v. Ebert*, 303 Neb. 394, 929 N.W.2d 478 (2019).

[28] § 29-818.

[29] *Khaitov v. Greater Omaha Packing Co.*, 319 Neb. 932, 25 N.W.3d 739 (2025).

[30] *State v. Jackson, supra* note 12.

[31] *In re Interest of Johnny H.*, 320 Neb. 675, 29 N.W.3d 808 (2026).

produced as evidence in any trial."[32] Thus, the State's interest extended to "ke[eping]" the property for use as evidence and thereafter disposing of it to the rightful owner or destroying it as contraband. And because the property seized here consisted of firearms, ammunition, and attachments to firearms, the directions in § 29-820(1)(e) and (f) imposed potential limitations upon the transferability of Christopher's ownership interests.

Because the statutes are plain, direct, and unambiguous, we look no further than the text. To the extent that Christopher used these items in the commission of crime, any transfer of his ownership was subject to the consequences of that usage. But to the extent they were not used in the commission of crime, had not been defaced or altered in any manner that violates any state or federal law, were not seized incident to an arrest for domestic assault, and had a lawful use and could be lawfully possessed, the court was empowered to acknowledge Christopher's transfer to David as effective upon termination of the State's interests in the property as evidence or otherwise.

Thus, we agree with David that his purported ownership interest was sufficient to support intervention. In other contexts, this court has deemed an ownership interest in the property that is the subject of the litigation to be sufficient to support intervention.[33] The district court did not err, as a matter of law, in sustaining David's motion to intervene.

This does not mean that David was necessarily entitled to the return of the property. Nor does it mean that an owner of seized property should not apply to the court having exclusive jurisdiction of it for approval of a transfer of ownership. We merely state that a transfer is not automatically void if done

---

[32] § 29-818.

[33] See, e.g., *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001); *McConniff v. Van Dusen*, 57 Neb. 49, 77 N.W. 348 (1898); *Holland v. Commercial Bank*, 22 Neb. 585, 36 N.W. 112 (1888).

without such approval and that based upon his allegations in support of intervention, David had standing to intervene.

### 3. MERITS OF DAVID'S MOTION FOR RETURN

Having rejected the State's jurisdictional argument, we now turn to the merits of David's motion for return of the seized property.

#### (a) Additional Facts

At oral argument, David conceded that he does not quarrel with the district court's factual findings in the order for the destruction. The factual basis for the plea appears in the record here and in the Court of Appeals' opinion.[34] Briefly summarized, it included information that law enforcement was dispatched to Christopher's home after he threatened to hurt himself; that he pointed a shotgun at officers; and that he told officers that if they attempted to enter a basement door, he would "'Blow them Away.'"

Then, based on the additional evidence on the matters regarding disposition of the seized property, the court set forth a thorough and extensive recitation (at least nine single-spaced pages) of the underlying events. Very briefly summarized, drawn from law enforcement reports, photographs, and body camera footage of the scene, the court found that Christopher loaded various firearms, verbally threatened to shoot law enforcement, identified specific firearms, and referred to "'a large number of loaded weapons'" and thousands of rounds of ammunition present in the home.

For the sake of completeness, we note that the court summarized or quoted Christopher's numerous threats of violence involving firearms and ammunition. A representative sample includes:

> During the standoff, [Christopher] could be heard loading numerous firearms, and he made the following comments to Deputy Shea[:]

---

[34] See *State v. McKinney, supra* note 4.

After Shea heard [Christopher] loading firearms: "We're ready to go. Let's go."

"Here's the thing. Roughly, I've got 3000 rounds of ammunition . . . And that's not counting .22 mags or .22s OK."

"And I've got a large number of loaded weapons."

"Here's the thing Officer Shea . . . The biggest thing in your world is making it home to your family alive. Right?"

"Are you wearing body armor, Officer Shea? . . . I'm guessing—just guessing—that you are wearing level 2 body armor. Is that correct? . . . Most officers wear level 2 body armor because that's a body armor they can do without inhibiting movement . . . . The gun that I have in my hand. A 30.06 165 grain bullet fired at 2800 feet per second will penetrate your body armor."

"You have two choices. You can go home and see your family. Or you can bother me."

. . . .

"I am offering you the opportunity to leave. Because right now, right now sittin' here, right now, I'm going to tell you full disclosure what I have: I got a 6.5 in my hand, three more inside, shooting a 168 grain bullet, off safe, three rounds in the chamber. I got a note written to my son on the floor. I have a 12 gauge with a 3" turkey mags there. I have 27 rounds of .22 mag ammo. I have 7-14 rounds of .22. I have another 12 gauge. I have a 30 uh a PMR 30, which is a .22 mag pistol."

. . . .

"I'm relaxed enough to pull the [expletive] trigger right now . . . . And the stupid part is that I'm dumb enough to pull the trigger on you too."

. . . .

"Okay. So let me ask you. I come out around the corner here, and I got 30 rounds in this thing . . . I got another

30 in my pocket—29 in my pocket actually to be honest. Okay? Along with 5 in here. Which one of us do you think is going to make it?"

"I've got 35 rounds of lethal ammunition—in my hand . . . I could hit your iris—from here . . . I'm consistent ten out of ten . . . . This isn't a good job for you."

The court's order also set forth a list of the seized property, which included ammunition and various firearms identified by brand, model, and serial number. The court's recitation determined: "Firearms were positioned throughout the house in what appeared to be staged locations near windows and doors. Extra magazines and ammunition were also staged in the same locations indicating that [Christopher] was taking up defensive fighting positions in the event that law enforcement breached the residence." Additionally, the court observed, "Several thousand rounds of ammunition [were] seized from the basement."

With these facts in place, the court next turned to the issues. Three aspects are significant.

First, it reasoned that the seized property (except for one firearm, referred to as the "Marlin .17 HMR") was derivative contraband, because it was used to commit terroristic threats against law enforcement. Relying on the statutory definition for "'[u]se of a deadly weapon,'"[35] it reasoned that although Christopher was not convicted of an offense under that statute, he was convicted of the "underlying felony" of terroristic threats. Based on the facts, it concluded that Christopher "employed or displayed" his firearms while he threatened law enforcement or immediately thereafter during the standoff. Additionally, his communication to law enforcement "indicated the presence of a large arsenal of weapons and ammunition and that he intended to harm [law enforcement] with said weapons if [they] did not leave." Therefore, under the

---

[35] See § 28-1205.

facts of this case, the firearms and ammunition were used to threaten law enforcement "*even if* some of the firearms were not actively employed or displayed." (Emphasis in original.)

Second, it concluded that at the time of its order, because Christopher was a convicted felon, the property was contraband per se. Further, citing § 29-818, it reasoned that Christopher could not circumvent the court's exclusive jurisdiction to determine the disposition of the seized property by purporting to transfer his ownership interest to David.

Finally, the court referred to the transfer as "purported[]." It reasoned that a return of property to another person having superior title "[s]urely . . . contemplates someone who *already had superior title at the time the item was seized . . . .*" (Emphasis in original.)

## (b) Discussion

### (i) Property Used in Crime

[21] We first consider David's derivative contraband argument. David contends that the court erred in concluding that most of the seized property was derivative contraband. Derivative contraband comprises objects which are not inherently illegal, but are used in an unlawful manner.[36]

David asserts that, at most, Christopher handled—and therefore "used"—three of the firearms in committing his crime. David asserts that the remaining property was merely present in the home and that Christopher's "mere suggestion that there were other firearms and ammunition in the home simply does not rise to the level necessary to make them instrumentalities of anything."[37] David also seems to argue that in order for the property to be derivative contraband, it must have been used to commit the specific crime of which the court found him guilty—terroristic threats.

---

[36] *State v. Zimmer, supra* note 19.

[37] Brief for appellant at 9.

The district court looked to the definition in § 28-1205(6)(d), which defines the offense of use of a deadly weapon to commit a felony. Section 28-1205(6)(d) states:

> Use of a deadly weapon includes the . . . employment, or visible display of any part of a firearm . . . during, immediately prior to, or immediately after the commission of a felony or communication to another indicating the presence of a firearm . . . during, immediately prior to, or immediately after the commission of a felony, regardless of whether such firearm . . . was discharged, actively employed, or displayed.

[22] We agree that this is a proper definition of "use" for purposes of analyzing whether the seized property was derivative contraband. We now hold that property seized in enforcing a criminal law falls within the category of derivative contraband if, but not only if, in fact it was used in a manner consistent with the definition in § 28-1205(6)(d).

On these facts, we see no error in the district court's conclusion that all firearms except for one—the Marlin .17 HMR—and all ammunition were derivative contraband, because Christopher used them in an "unlawful manner" as an instrumentality of crime. In committing terroristic threats against law enforcement, Christopher employed and visibly displayed various firearms, and he communicated to law enforcement indicating the presence of a large number of firearms and thousands of rounds of ammunition.

[23] Regarding all items used in the commission of crime (i.e., everything but the Marlin .17 HMR), the court did not abuse its discretion in overruling David's motion for return and ordering destruction. As to those items, we need not address the court's alternative reasoning that the property was contraband per se or the validity of the purported transfer. It makes no difference. An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different

reasoning.[38] We therefore affirm the district court's order for the destruction of those items of derivative contraband.

### (ii) Single Item Not Used

The State does not challenge the court's conclusion that a single firearm—the Marlin .17 HMR—was not derivative contraband. The court found that Christopher "did not threaten [law enforcement]" with it and that although they discussed this firearm, Christopher "specifically told [law enforcement] that he just got it and didn't have any bullets for it yet."

The question then becomes whether the court abused its discretion in failing to order the return of this single firearm to David. To the extent that the court employed the State's reasoning that § 29-818 was a complete bar on the transfer, we reject that notion for the same reasons stated above. We also reject the notion that this single firearm was contraband per se.[39]

As discussed below, two potential dispositional paths likely would follow. The appropriate path hinges on the validity of the transfer.

[24-27] When criminal proceedings have terminated, the person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property.[40] Seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person

---

[38] *Syring v. Archdiocese of Omaha*, 317 Neb. 195, 9 N.W.3d 445 (2024).

[39] See *State v. Zimmer, supra* note 19 (contraband per se comprises objects possession of which, without more, constitutes crime). See, also, 94 C.J.S. *Weapons* § 73 (2023) (firearms are not contraband per se and may not be subjected to seizure and forfeiture simply on basis of possession, except, for example, on conviction of offense of knowing unlawful possession of firearm).

[40] *State v. Ebert, supra* note 27.

from whom the property was taken need not present additional evidence of ownership.[41] A presumption of ownership is created by exclusive possession of personal property, and evidence must be offered to overcome that presumption.[42] The presumptive right to possession of seized property may be overcome when superior title in another is shown by a preponderance of the evidence.[43]

### a. Factual Findings Not Made
### Regarding Transfer

We cannot read the district court's order to make factual findings regarding the actual existence of the asserted transfer. David's affidavit said merely that Christopher "gave" David "all of his interest in the property." Here, David was the purported donee. We have no writing or testimony from the purported donor.

We emphasize that nothing precluded the court from rejecting the factual predicates of the purported transfer. It was presented with an affidavit and had no opportunity to assess the veracity or credibility of the affiant. The court was not required to accept it as true, particularly without supporting documentation (e.g., a bill of sale or deed of gift). Additional evidence might be required to satisfy a court before ordering the transfer of possession of a firearm from a government custodian to a transferee.[44] In other words, if the trial court is not provided with credible evidence as to a transferee's

---

[41] *State v. Zimmer, supra* note 19.

[42] *State v. Ebert, supra* note 27.

[43] *State v. Zimmer, supra* note 19.

[44] See, generally, *Henderson v. United States*, 575 U.S. 622, 135 S. Ct. 1780, 191 L. Ed. 2d 874 (2015) (holding that court-ordered transfer of felon's lawfully owned firearms from government custody to third party is not barred by federal statute prohibiting felon's possession of firearms if court is satisfied that recipient will not give felon control over firearms, so that felon could either use them or direct their use).

ownership or entitlement of property seized pursuant to a warrant, a motion for return of the property should not be granted.[45]

Because the firearm was not in Christopher's possession when he "gave" it to David, the threshold question is whether the transfer met the elements of a gift. To make a valid inter vivos gift, there must be an intention to transfer title to property, delivery by the donor, and acceptance by the donee.[46] Ordinarily, actual delivery is necessary where the subject of the gift is capable of manual delivery, but where actual manual delivery cannot be made, the donor may do that which, under the circumstances, will in reason be considered equivalent to actual delivery.[47]

But here, the court did not address the threshold question. It instead essentially accepted the State's argument that no such gift could have any effect during the duration of the seizure. We acknowledge that the court did not have the benefit of guiding precedent regarding a transfer at such a time.

For the same reasons explained above, a complete bar on accepting the validity of such a transfer goes too far. We reverse the order for the destruction of the Marlin .17 HMR and remand the cause for further proceedings to address the threshold question and to apply its findings to the remaining issues. In doing so, the court may determine the answer based on the existing record or it may receive additional evidence.

To guide the court on remand, we address the consequences that likely flow from the answer to that question.[48]

---

[45] See 79 C.J.S., *supra* note 20, § 293.

[46] *In re Estate of Marsh*, 307 Neb. 893, 951 N.W.2d 486 (2020).

[47] *Id.*

[48] See *Slater v. Ichtertz*, 320 Neb. 159, 26 N.W.3d 504 (2025) (appellate court may discuss issues unnecessary to disposition where those issues are likely to recur during further proceedings).

### b. Likely Consequences

#### i. Valid Transfer of Marlin

If the court determines that David proved that Christopher did that which, under the circumstances, was in reason considered equivalent to actual delivery, then a valid ownership transfer occurred. Unless other circumstances are prohibitive, the court would sustain David's motion in part—as to the Marlin .17 HMR only—and order law enforcement to transfer possession of it to David.

[28] A motion for the return of seized property is properly denied only if the claimant is not entitled to lawful possession of the property, the property is contraband or subject to forfeiture, or the government has some other continuing interest in the property.[49]

#### ii. Not Valid

If the court determines that David failed to prove that Christopher did that which, under the circumstances, was in reason considered equivalent to actual delivery, then no transfer occurred. It would necessarily follow that because of Christopher's status as a convicted felon, the Marlin .17 HMR could not be returned to him.[50] Under this path, the court would need to fashion appropriate relief, not including the return of the firearm to Christopher but affording him an opportunity to preserve, realize, or transfer the market value, if any, of his nonpossessory ownership interest.

### VI. CONCLUSION

As set forth in our analysis, we conclude:

- The seizure and retention of property as evidence in no manner denies or affects the title of the true owner but simply

---

[49] *State v. Zimmer, supra* note 19.

[50] See § 28-1206 (addressing possession of deadly weapon by prohibited person).

postpones his or her right of possession until the exigencies of the prosecution are satisfied.

• The court in which a criminal charge was filed has exclusive jurisdiction to determine the rights to seized property, and the property's disposition.

• Section 29-818 did not completely bar Christopher from transferring any of his ownership interest without the court's prior approval.

• Property seized in enforcing a criminal law falls within the category of derivative contraband if, but not only if, in fact it was used in a manner consistent with the definition in § 28-1205(6)(d).

• Because all of the seized items, except the Marlin .17 HMR, were derivative contraband, the court did not abuse its discretion in ordering the destruction of those items.

• The Marlin .17 HMR was not contraband per se, and its proper disposition depends upon a largely factual determination of the validity of Christopher's purported transfer of ownership to David.

We therefore affirm the order for the destruction of the seized items, except the Marlin .17 HMR. We reverse the order for the destruction of that single item and remand the cause for further proceedings consistent with this opinion.

Affirmed in part, and in part reversed and
remanded for further proceedings.